UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARK G. CAMPBELL,

      Plaintiff,

vs.

AUTOMOTIVE COMPONENT CARRIER,
LLC, an Ohio limited liability company and
wholly-owned subsidiary of PENSKE LOGISTICS,
LLC, a Delaware limited liability company,

      Defendant.

Case No. 2:15-cv-11436
Hon. Gershwin A. Drain

_____/
Raymond J. Sterling (P34456)
Christine A. Hopkins (P76264)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
chopkins@sterlingattorneys.com
_____/

# FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Mark G. Campbell, by his attorneys, Sterling Attorneys at Law, P.C., for his First Amended Complaint and Jury Demand against defendant Automotive Component Carrier, LLC, submits the following:

## JURISDICTIONAL ALLEGATIONS

1.    Plaintiff is an individual residing in Bloomfield Hills, Michigan.

2. Defendant Automotive Component Carrier, LLC ("ACC") is an Ohio limited liability company.

3. Defendant ACC owns and operates a fleet of trucks and multiple dispatch terminals in the State of Michigan, including a terminal in Flint, Michigan.

4. Plaintiff is a former employee of defendant.

5. Defendant ACC is an employer as defined by the Americans with Disabilities Act, 42 USC 12101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

6. Defendant ACC is a commercial motor carrier as defined by 49 USC 31101 and a person as defined by 49 USC 31105.

7. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

8. This Court has supplemental jurisdiction over plaintiff's supplemental state law claim under 28 USC 1367.

9. Venue is proper in this district under 28 USC 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

10. Plaintiff timely filed a charge of disability discrimination and failure to accommodate with the EEOC.

11. Plaintiff timely filed his complaint with this court within 90 days of receiving his EEOC right to sue notice.

12. Plaintiff timely filed a complaint with the US Secretary of Labor regarding his Surface Transportation Assistance Act (STAA) claim.

13. Plaintiff files this First Amended Complaint seeking *de novo* review and a jury trial on his STAA complaint under 49 USC 31105(c).

14. More than 210 days have passed since plaintiff filed his STAA complaint with the US Secretary Labor and the US Secretary of Labor has not issued a final decision on his complaint.

15. Plaintiff provided 15 days advanced notice to the US Secretary of Labor of his intent to file his STAA claim in US District Court pursuant to 29 CFR 1798.114(b).

## GENERAL ALLEGATIONS

**Plaintiff was a competent and safety-conscious truck driver**

16. Plaintiff began working for defendant as a truck driver in August of 2005.

17. Plaintiff had 18 years of commercial driving experience prior to joining ACC.

18. Plaintiff took pride in making his pick-ups and deliveries for defendant in a safe manner and in compliance with state and federal safety regulations.

19. Plaintiff also took pride in advocating for improvements in the working conditions for his fellow truck drivers.

20. As a result, plaintiff was elected by his fellow truck drivers to represent them as an alternate committeeperson for UAW Local 659 in the Flint District.

### Plaintiff begins to suffer medical symptoms that require him to take longer restroom breaks

21. In November 2013, plaintiff began to experience digestive difficulties and abdominal distress.

22. Plaintiff's symptoms required him to use the restroom more frequently, for longer periods of time, and, at times, on a more urgent basis.

23. In 1981, plaintiff had been diagnosed with Crohn's disease.

24. Plaintiff's Crohn's disease had been in remission during his career at ACC.

25. Plaintiff believed his onset of symptoms was a relapse of his Crohn's disease.

26. Plaintiff remained fully capable of performing his job duties.

27. Plaintiff's symptoms never prevented him from picking up his cargo within the designated pickup windows.

28. Plaintiff's symptoms never prevented him from delivering his cargo within the designated delivery windows.

29. Plaintiff did not believe he needed a reasonable accommodation to continue to perform his job duties for ACC.

### ACC does not issue any counseling or warnings to plaintiff about the frequency, length or logging of his breaks

30. ACC tracks its drivers' daily routes with GPS units.

31. The GPS units are installed on ACC's trucks.

32. The GPS units transmit data about each truck's speed, engine revolutions, shift points, brake applications, and geographic location back to ACC's computers.

33. The GPS units automatically create the electronic driver logs that ACC is required to maintain pursuant to U.S. Department of Transportation regulations.

34. ACC can and does monitor its drivers' activities via the GPS units and electronic driver logs.

35. From November 2013 through February 23, 2014, ACC never once counseled plaintiff that there was any problem with the frequency or length of the breaks he took along his route.

36. During that three and half month period, plaintiff had been taking breaks along his route as necessary to either wait out his digestive symptoms or use restroom facilities.

37. On or about November 22, 2013, ACC manager Greg Rich noticed that plaintiff was at the Flint terminal well after the time that plaintiff usually got on the road.

38. Plaintiff explained to Rich that he had needed to use the restroom.

39. Rich did not counsel, warn, or reprimand plaintiff in any way.

### Plaintiff receives a subpoena to testify
### in support of a fellow employee's whistleblower case

40. On February 19, 2014, Administrative Law Judge Alice Craft signed a subpoena requiring plaintiff to appear to testify at a March 4 and 5, 2014 hearing on the whistleblower claims of former ACC employee Martin McCray.

41. In the whistleblower case pending before Judge Craft, McCray alleged that ACC fired him in retaliation for his complaints about the safety of ACC's trucks, trailers, and facilities.

42. Judge Craft issued the subpoena to plaintiff at the request of McCray's counsel.

43. ACC had fired McCray on March 11, 2011.

44. ACC had expended significant resources between 2011 and 2014 defending itself against McCray's wrongful termination claims.

45. The March 4, 2014 hearing was the first time a judge would hear live, sworn testimony on one of McCray's wrongful termination claims.

**ACC receives the subpoena and calls plaintiff into a disciplinary meeting**

46. On February 19, 2014, plaintiff submitted McCray's subpoena to ACC along with a request to take time off to testify at the March 4 and 5, 2014 hearing.

47. ACC knew that plaintiff had advocated for the reinstatement of McCray's employment.

48. ACC also knew that plaintiff had worked with McCray to bring attention to some of the safety problems at issue in the March 4 and 5, 2014 hearing.

49. On February 24, 2014, ACC called plaintiff into a disciplinary meeting.

50. ACC presented certain electronic driver logs and Google map printouts to plaintiff in the meeting.

51. ACC accused plaintiff of taking unauthorized breaks and falsifying his driver logs and manifests.

52. Plaintiff denied any wrongdoing.

**Plaintiff requests a reasonable accommodation for his disability**

53. The February 24, 2014 meeting was the first time that ACC put plaintiff on notice that it believed plaintiff had violated any company rules by taking the medically necessary breaks.

54. In response, at the very same meeting, plaintiff informed ACC about his disabling medical symptoms and his Crohn's diagnosis.

55. At the meeting, plaintiff also asked ACC to allow him any accommodations that would be necessary for him to take medically necessary breaks.

56. ACC nonetheless suspended plaintiff's employment indefinitely without pay.

### Plaintiff testifies against ACC

57. On March 4 and 5, 2014, plaintiff provided sworn testimony in McCrays' STAA whistleblower claim.

58. Plaintiff testified to his belief that "Mr. McCray was the subject of intense scrutiny on the part of the company for activities that he had engaged in related to complaints to outside agencies, safety issues, condition of equipment, and so on."

59. ACC management official Steve Capser was present at the hearing on March 4 and 5, 2014 and heard plaintiff provide this testimony against ACC.

### ACC ignores plaintiff's accommodation request and doctor's note

60. On March 6, 2014, plaintiff followed up on his reasonable accommodation request by providing ACC a doctor's note.

61. The March 6, 2014 doctor's note verified plaintiff's Crohn's disease diagnosis and digestive symptoms.

62. Following the February 24, 2014 meeting, ACC did not communicate with plaintiff in any way about his reasonable accommodation request or his disability.

63. ACC did not ask plaintiff or plaintiff's doctor for any additional information.

64. ACC did not send plaintiff to a company doctor for evaluation.

65. ACC did not inform plaintiff whether his reasonable accommodation request had been granted or denied.

**ACC fires plaintiff due to his disability, request for reasonable accommodation, and participation in McCray's STAA hearing**

66. On March 14, 2014, ACC fired plaintiff.

67. ACC back-dated its notice of plaintiff's termination to February 24, 2014.

68. Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that ACC discriminated against him because of his disability and failed to reasonably accommodate his disability.

69. Plaintiff also filed a Surface Transportation Assistance Act ("STAA") retaliation complaint against ACC through the U.S. Department of Labor alleging that ACC terminated him for acting as a witness for McCray.

## COUNT I
## DISABILITY DISCRIMINATION– ADAA

70. Plaintiff incorporates the preceding paragraphs by reference.

71. Plaintiff suffers from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

72. Plaintiff also has a record of suffering from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

73. Defendant knew or had reason to know of plaintiff's disability.

74. Plaintiff was qualified for his position.

75. Defendant discriminated against plaintiff with respect to his terms, conditions, and privileges of employment because of plaintiff's disability or because they perceived him to be disabled.

76. Defendant treated similarly situated employees who did not have disabilities and who were not regarded as disabled more favorably than plaintiff.

77. Defendant terminated plaintiff on the basis of his disability.

78. Defendant's alleged reason for firing plaintiff was a pretext for disability discrimination.

79. Defendant's discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Americans with Disabilities Act, 42 USC 12101, *et seq*.

80. As a direct and proximate result of defendant's conduct, plaintiff has suffered injuries and is entitled to:

    A. compensation for his loss of wages;

    B. compensation for loss of fringe benefits;

    C. compensation based on his earning potential;

    D. emotional distress damages;

    E. punitive damages; and

    F. other incidental and consequential damages, including attorney fees.

## COUNT II
## FAILURE TO PROVIDE
## REASONABLE ACCOMMODATIONS– ADAA

81. Plaintiff incorporates the preceding paragraphs by reference.

82. Plaintiff suffers from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

83. Defendant knew or had reason to know of plaintiff's disability.

84. Plaintiff was qualified for his position.

85. Plaintiff requested a reasonable accommodation to take medically necessary breaks during his assigned routes.

86. The accommodation plaintiff requested would not have required defendant to change the pickup or delivery windows for plaintiff's assigned route.

87. The accommodation plaintiff requested would not have caused an undue hardship to defendant.

88. Defendant failed to engage in an interactive process with plaintiff to discuss plaintiff's disability and possible reasonable accommodations.

89. Defendant failed to reasonably accommodate plaintiff's disability.

90. Defendant terminated plaintiff on the basis of his request for reasonable accommodation.

91. As a direct and proximate result of defendant's conduct, plaintiff has suffered injuries and is entitled to:

    A. compensation for his loss of wages;

    B. compensation for loss of fringe benefits;

    C. compensation based on his earning potential;

    D. emotional distress damages;

    E. punitive damages; and

    F. other incidental and consequential damages, including attorney fees.

## COUNT III
## DISABILITY DISCRIMINATION– MPWDCRA

92. Plaintiff incorporates the preceding paragraphs by reference.

93. Plaintiff suffers from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

94. Plaintiff also has a history of suffering from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

95. Defendant knew or had reason to know of plaintiff's disability.

96. Plaintiff was qualified for his position.

97. Defendant discriminated against plaintiff with respect to his terms, conditions, and privileges of employment because of plaintiff's disabilities or because it perceived him to be disabled.

98. Defendant treated similarly situated employees who did not have disabilities and who were not regarded as disabled more favorably than plaintiff.

99. Defendant terminated plaintiff on the basis of his disability.

100. Defendant's alleged reason for firing plaintiff was a pretext for disability discrimination.

101. Defendant's discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

102. As a direct and proximate result of defendant's discriminatory conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

  B. compensation for loss of fringe benefits;

  C. compensation based on his earning potential;

  D. emotional distress damages;

  E. other incidental and consequential damages, including attorney fees.

## COUNT IV
## FAILURE TO REASONABLY ACCOMMODATE DISABILITY– MPWDCRA

103. Plaintiff incorporates the preceding paragraphs by reference.

104. Plaintiff suffers from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

105. Defendant knew or had reason to know of plaintiff's disability.

106. Plaintiff was qualified for his position.

107. Plaintiff requested a reasonable accommodation to take medically necessary breaks during his assigned routes.

108. The accommodation plaintiff requested would not have required defendant to change the pickup or delivery windows for plaintiff's assigned route.

109. The accommodation plaintiff requested would not have caused an undue hardship to defendant.

110. Defendant failed to engage in an interactive process with plaintiff to discuss plaintiff's disability and possible reasonable accommodations.

111. Defendant failed to reasonably accommodate plaintiff's disability.

112. Defendant terminated plaintiff on the basis of his request for reasonable accommodation.

113. As a direct and proximate result of defendant's conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    emotional distress damages;

    E.    other incidental and consequential damages, including attorney fees.

## COUNT V
## RETALIATION-STAA

114. Plaintiff incorporates the preceding paragraphs by reference.

115. Plaintiff is an employee covered by the protections of the Surface Transportation Assistance Act ("STAA"). 49 USC 31101.

116. Prior to suspending plaintiff without pay, defendant knew that McCray had subpoenaed plaintiff to testify at the March 4-5, 2014 hearing on his STAA whistleblower claims.

117. Prior to discharging plaintiff, defendant knew that plaintiff had testified at McCray's March 4-5, 2014 hearing on McCray's STAA whistleblower claims.

118. Defendant discriminated against plaintiff regarding pay, terms, or privilege of employment because of plaintiff's anticipated or actual testimony in McCray's STAA proceeding. 49 USC 31105(a)(1)(A)(i).

119. Defendant discharged plaintiff because of plaintiff's anticipated or actual testimony in a STAA proceeding. 49 USC 31105(a)(1)(A)(i).

120. Defendant's alleged reason for failing to engage in an interactive process with plaintiff and accommodate plaintiff's disability was a pretext for retaliation.

121. Defendant's alleged reason for discharging plaintiff was a pretext for retaliation.

122. Defendant consciously disregarded plaintiff's rights under the STAA and/or willfully violated the STAA.

123. As a direct and proximate result of defendant's conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    punitive damages;

    E.    other incidental and consequential damages, including attorney fees.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendant, in whatever amount in excess of Seventy-Five Thousand Dollars ($75,000) plaintiff is found to be entitled, together with reinstatement, punitive damages, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Mark G. Campbell, by his attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

    Respectfully submitted,

    STERLING ATTORNEYS AT LAW, P.C.

    By: /s/Christine A. Hopkins
        Raymond J. Sterling (P34456)
        Christine A. Hopkins (P76264)
        Attorneys for Plaintiff
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

Dated: May 28, 2015